IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

FILED
OCT 1 5 2014
United States Magistrate Ju...

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER AUTHORIZING THE USE OF A PEN REGISTER DEVICE AND TRAP AND TRACE DEVICE FOR TELEPHONE NUMBER 417-241-5444 | No. 14-PR-3003PR <br><br> (UNDER SEAL) |

## APPLICATION

Gary Milligan, Assistant United States Attorney, Western District of Missouri, (hereinafter "Applicant") hereby applies to the Court pursuant to 18 U.S.C. §§ 3122, 3123 and 2703(d) for an order authorizing the installation and use of a pen register, a trap and trace device and enhanced caller identification (hereinafter "Pen/Trap") on telephone bearing number 417-241-5444 (hereinafter the "Target Telephone"), including the authorization for the disclosure of subscriber information for the numbers captured by the Pen/Trap. In support of this application, I state the following:

1. Applicant is an "attorney for the Government," as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure, and therefore, pursuant to 18 U.S.C. §§ 3122 and 2703(d), may apply for an order authorizing the installation and use of a Pen/Trap.

2. By this application, the Government seeks an order authorizing (A) the installation and use of a Pen/Trap on the Target Telephone and (B) the acquisition of subscriber information related to the use of the Target Telephone.

### (A) PEN REGISTER / TRAP AND TRACE

3.  Pursuant to 18 U.S.C. § 3123(a)(1), upon an application made under 18 U.S.C. §3122(a)(1) a court "shall enter an ex parte order authorizing the installation and use of a pen register or trap and trace device anywhere within the United States, if the court finds that the attorney for the Government has certified to the court that the information likely to be obtained by such installation and use is relevant to an ongoing investigation."

4.  Installation and use of a pen register will record or decode dialing, routing, addressing, or signaling information transmitted from the Target Telephone. The information transmitted from the Target Telephone will include information dialing, routing, addressing, or signaling information for "push-to-talk" communications if the cellular device is push-to-talk capable and will include dialing, routing, addressing, or signaling information for text messaging communications if the cellular device is text messaging capable. The information will also include records regarding the date, time and duration of calls created by such incoming impulses, for a period of sixty days.

5.  Installation and use of a trap and trace device on the Target Telephone will capture and record the incoming electronic or other impulses which identify the originating numbers or other dialing, routing, addressing, or signaling information reasonably likely to identify the sources of wire or electronic communications. The information transmitted from the Target Telephone will include information dialing, routing, addressing, or signaling information for "push-to-talk" communications if the cellular device is push-to-talk capable and will include dialing, routing, addressing, or signaling information for text messaging communications if the

2

cellular device is text messaging capable. The information will also include records regarding the date, time and duration of calls created by such incoming impulses, for a period of sixty days.

6. A caller identification service is a trap and trace device under 18 U.S.C. § 3127(4); *See United States v. Fregoso*, 60 F.3d 1314, 1320 (8th Cir. 1995). Thus, this order will also direct that Verizon Corporation examine the above-listed telephone number and add enhanced caller identification service to the existing service if it is not presently equipped with the feature.

### (B) SUBSCRIBER INFORMATION

7. Pursuant to 18 U.S.C. § 2703(d), a court may order an electronic communication service to disclose non-content information about a customer or subscriber if the Government "offers specific and articulable facts showing that there are reasonable grounds to believe that the .... records or other information sought are .... relevant and material to an ongoing criminal investigation."

8. Applicant certifies the Drug Enforcement Administration is conducting a criminal investigation of Eric MCCLANAHAN, Kenny FRIEND, and others as yet unknown, in connection with possible violations of 21 U.S.C. §§ 841(a)(1) and 846, that is, distribution, possession with the intent to distribute, and conspiracy to distribute controlled substances. It is believed one or more of the subjects of the investigation are using the Target Telephone, a mobile cellular device issued by Verizon Corporation, used by Eric MCCLANAHAN in furtherance of the subject offenses.

9. In support of its request for an order under 18 U.S.C. § 2703(d) directing the furnishing of subscriber information, and based upon discussions with DEA Task Force Officer (TFO) Daniel P. Banasik, Applicant sets forth the following specific and articulable facts showing

3

there are reasonable grounds to believe the information sought is relevant and material to an ongoing criminal investigation:

    a.    On August 1, 2014, TFO Daniel P. Banasik received an unsolicited series of text messages from Melody CARPENTER concerning Kenny FRIEND. CARPENTER was a Confidential Informant with the Missouri State Highway Patrol but was de-activated as a confidential informant pursuant to the discovery of her unauthorized illegal activity. She was not informed of her de-activated status in order to preserve the on-going investigation. CARPENTER still contacts law enforcement on an irregular basis but is not directed in any of her activities or requested to assist. It is believed CARPENTER still provides truthful information, but it is limited in scope. It is TFO Banasik's opinion that CARPENTER is cautious in providing law enforcement with the assistance necessary to initiate a prosecutable case in order to maintain her methamphetamine sources, establish an alibi for her association with these subjects, and attempt to appease law enforcement to gain leniency on her outstanding charges.

    b.    The text messages stated, "Ivr got important info...DONETTEt and kenny friend are going to meet the big plug in Las Vegas, they are having a meeting and im thinking picking up a lot or dropping money...for sure meeting him..staying 4 days..," "They left dont know if they r flying, pretty sure they are.this is the biggest plug bringing stuff in and sending it in from California. ..clayton is first name from L.A., supposedly last name is mendez and family runs a lot of that area.," and "I know where they r driving to fed x money, in Bentonville, AR. They wear gloves and everything. ..they r dropping a shitload."

4

c. Through previous contact with CARPENTER and other intelligence gained in this investigation, officer's interpreted the aforementioned text messages to mean Kenny FRIEND and Donette DAVIS were traveling to Las Vegas, Nevada, to meet with a major Los Angeles, California based methamphetamine source of supply identified as Clayton MENDEZ. CARPENTER believes FRIEND and Donette DAVIS are intending to deliver a large sum of money or receive a large amount of methamphetamine while there. CARPENTER provided Kenny FRIEND's telephone number as 417-365-2085, and Donette DAVIS telephone number as 417-365-7884. Clayton MENDEZ was later identified as Clayton J. MENDEZ, Lancaster, California.

d. On August 2, 2014, CARPENTER sent another unsolicited text message to TFO Banasik which stated, "Yes in atlanta...that was from kenny." This text message is believed to mean that Kenny FRIEND was en route to Las Vegas, Nevada, but was currently at the airport in Atlanta. An inquiry by Homeland Security Investigation Special Agent Greg Swearngin revealed Clayton MENDEZ was at the Bellagio Hotel and Casino on August 2, 2014. Also toll analysis on Kenny FRIEND'S telephone indicated FRIEND contacted the Bellagio Hotel and Casino five (5) times on August 2, 2014.

e. Intelligence on Clayton MENDEZ revealed in July and August 2013, MENDEZ met with two undercover Homeland Security Investigations Special Agents and attempted to broker the delivery of fifty pounds of methamphetamine from Manhattan Beach, California, to Kansas City/Springfield, Missouri. MENDEZ told the undercover agents that he represented people in Missouri that were willing to purchase the methamphetamine for $7,000.00 per pound.

f. On August 2, 2013, MENDEZ flew to Kansas City, Missouri, in preparation to finalize the arrangements and delivery of the methamphetamine. On August 5, 2013, the undercover agents flew to Kansas City, Missouri to facilitate the transactions. During this time MENDEZ provided the undercover agents directions to what he referred to as a "cabin" south of Springfield, Missouri. The location was determined to be 140 Hawthorne Lane, Highlandville, Missouri and a court authorized GPS Locator activated on MENDEZ'S telephone revealed him to be in this area.

g. On August 6, 2013, the date of the scheduled delivery, MENDEZ advised the undercover officers he only had $100,000.00 and would only be purchasing twenty pounds of methamphetamine. MENDEZ continued and stated he was having difficulty arranging the transaction because the people he was brokering the transaction for were not willing to allow him to take the money from the Springfield area to Kansas City to meet the undercover officers. No suitable arrangement could be made and the transaction did not occur.

h. A telephone toll analysis of the telephone MENDEZ was utilizing to negotiate the fifty pound transaction with the undercover officer indicated MENDEZ'S second most frequently called number was a telephone subscribed to Eric MCCLANAHAN, who will be discussed below. Also on the toll data was a common called number between MENDEZ'S telephone and a telephone seized on October 11, 2013, from a residence in Monett, Missouri, after the controlled delivery of thirty pounds of methamphetamine. The owner of the telephone was not positively identified.

6

i. On August 20, 2014, Jacqueline Calhoun, the mother of Gary BUTTS, contacted the Drug Enforcement Administration out of concern for her 14 year old grandchild, who is currently residing with her son. Calhoun believes BUTTS is associated with a drug cartel member from Los Angeles, California, whom Calhoun identified as Clayton MENDEZ. Calhoun stated BUTTS had partnered with Rick Sherwood because BUTTS owes MENDEZ a large drug debt, and BUTTS and Sherwood are distributing large amounts of methamphetamine for MENDEZ in the Springfield area. Calhoun stated in the year 2013, she had rented several cars for BUTTS and Sherwood so they could travel to California and meet with MENDEZ. Calhoun also stated in 2013, she had received, for BUTTS and Sherwood, several delivery packages from MENDEZ, which she believed contained large amounts of methamphetamine. Calhoun stated BUTTS' current telephone number is (417) 241-1442, and stated in the past BUTTS has had many "throw" phones.

j. On September 4, 2014, Special Agent Tim Krisik, Task Force Officer Dan Banasik and Tennessee Highway Patrolman Charles Stewart conducted an interview of Michael JOHNSON regarding his knowledge of Eric MCCLANAHAN. At the time of the interview, JOHNSON was incarcerated in the Jackson County, Tennessee Jail, after a vehicle enforcement stop resulted in the seizure of a small amount of methamphetamine and approximately $10,000.00.

k. JOHNSON identified his source of supply for methamphetamine as Eric MCCLANAHAN, a resident of the Springfield, Missouri area. JOHNSON confirmed MCCLANAHAN'S identity from a photograph shown to JOHNSON by TFO Banasik.

JOHNSON stated that MCCLANAHAN is originally from California but also has ties to Kansas City, Missouri. JOHNSON stated he met MCCLANAHAN approximately one year ago through a mutual friend identified as Adam Riley. JOHNSON stated Riley is a distributor for MCCLANAHAN and the introduction was conducted so JOHNSON could purchases methamphetamine directly from MCCLANAHAN.

l. JOHNSON began by purchasing quarter pound quantities of methamphetamine from MCCLANAHAN several times a week but the amount steadily increased. JOHNSON stated that prior to his arrest he was traveling to Springfield and Kansas City, Missouri, two times a week to purchase up to two (2) pounds of methamphetamine from MCLANAHAN. JOHNSON was paying $14,000 per pound. JOHNSON estimated traveling to Springfield, Missouri, thirty to fifty (30-50) times and to Kansas City ten to fifteen (10-15) times to purchase methamphetamine from MCCLANAHAN. JOHNSON stated MCCLANAHAN frequents Harrah's Casino and methamphetamine exchanges frequently occur there. An inquiry with the Missouri State Highway Patrol's Gaming Division revealed MCCLANAHAN frequents Harrah's Casino. JOHNSON stated that MCCLANAHAN is receiving ten (10) to twelve (12) pounds of methamphetamine per week from Carlos LNU, who currently lives in the Kansas City area.

m. JOHNSON indicated MCCLANAHAN is paid in cash, Wal-Mart MoneyGrams, or Green Dot cards. The Green Dot cards and MoneyGrams are sent to MCCLANAHAN in other people's names, usually associates of MCCLANAHAN'S, including Bonnie AMODIO and Chad BREDE. Several text messages on JOHNSON's

8

Case 6:14-pr-02062-DPR   Document 1   Filed 10/15/14   Page 8 of 18

telephone, from MCCLANAHAN via 913-638-0271, or telephone number 712-265-0263, confirmed this statement. In text messages from both 913-638-0271 and telephone number 712-265-0263, all photographed from JOHNSON's cellular telephone, JOHNSON is advised to send the Wal-Mart MoneyGrams to Bonnie AMODIO, 417-268-8013; Amber BULLOCK, 417-597-7904; and Chad BREDE, 417-616-9465; JOHNSON also gave MCCLANAHAN a Green Dot card number of 693-846-8117. JOHNSON has seen MCCLANAHAN with large amounts of U. S. currency on several occasions including in excess of one hundred thousand dollars in early August 2014, in a motel room in Kansas City, Missouri. JOHNSON believes MCCLANAHAN utilizes his drug proceeds to purchase large ticket items or transfers it to his uncle for investment. JOHNSON also stated MCCLANAHAN has a money counter at his residence in Fair Grove, Missouri.

n.  JOHNSON then identified several of MCCLANAHAN'S associates. JOHNSON's knowledge of these associates comes from personal observations or direct or indirect information received from MCCLANAHAN. JOHNSON identified Bonnie AMODIO, telephone numbers 417-343-0598, 417-771-4064, 417-496-9925, and 417-268-8013, as MCCLANAHAN'S girlfriend who assists MCCLANAHAN in arranging drug transactions, transportation, distribution, and money collection. JOHNSON stated he has sent money to MCCLANAHAN, via Wal-Mart Money Grams and Green Dot, under AMODIO'S name several times.

o.  JOHNSON described Chad BREDE, telephone number 417-616-9465, as MCCLANAHAN'S "right hand man." JOHNSON indicated BREDE does everything for MCCLANAHAN including transportation, money collection, distribution, or any other

9

task MCCLANAHAN requires. JOHNSON stated he has sent money to MCCLANAHAN, via Wal-Mart MoneyGram and Green Dot, under BREDE'S name on several occasions.

p. JOHNSON identified Crystal CULBERTSON, telephone number 417-987-9932, as a lower level distributor and who rents hotel rooms, usually in her or a friend's name, for MCCLANAHAN.

q. JOHNSON then stated an individual known only to JOHNSON as Kenny, telephone number and description unknown but from Springfield, Missouri, is one of MCCLANAHAN'S main distributors. JOHNSON believes Kenny is receiving up to four pounds of methamphetamine from MCCLANAHAN a week, usually in two pound shipments. Through toll analysis Kenny is believed to be Kenny FRIEND.

r. JOHNSON stated MCCLANAHAN utilizes cellular telephones, both voice and text messaging, to conduct and coordinate his drug organization. JOHNSON stated MCCLANAHAN has numerous telephone numbers at his disposal and reuses these numbers. JOHNSON then provided nine telephone numbers he had stored in his telephone for MCCLANAHAN. JOHNSON also provided the names of several other associates and distributors for MCCLANAHAN but they are not mentioned in this affidavit.

s. In June 2014, a Missouri State Highway Patrol Confidential Informant attempted to purchase two ounces of methamphetamine form Crystal CULBERTSON but the transaction did not occur. On September 12, 2014, the Confidential Informant sent Missouri State Highway Patrol Corporal Wes Collins the following text message, "I saw

crystal last night. She stopped by the car lot after hours to talk. I wasn't given much warning or I would have notified you. I was able to record our conversation with my ipod though. She was there for a couple of hours and talked alot. She told me about Eric McClanahan .....She's still selling for Eric from what I gather. I know she can still get weight. Do you want me to try and do another buy or maybe get introduced to Eric and get a little deeper in their circle?" During a later conversation the confidential source provided CULBERTSON'S telephone number as 417-987-9932

t. On September 18, 2014, a pen register application and order authorizing Verizon Corporation, the service provider for cellular telephone numbers 712-265-0263 and 913-638-0271 were signed by the Honorable David P. Rush, United States Magistrate for the Western District of Missouri. On the same date, the DEA St. Louis Technical Operations group arranged with Verizon Corporation for the installation of the pen registers. Verizon Corporation informed the Drug Enforcement Administration that telephone numbers 712-265-0263 and 913-638-0271 were no longer in use. Accordingly, the pen registers were not installed.

u. On October 3, 2014, Task Force Officer Charles Stewart, Jackson, Tennessee, Resident Office contacted Special Agent Tim Krisik and provided Special Agent Krisik with additional contact numbers for Eric MCCLANAHAN. Task Force Officer Stewart advised Special Agent Krisik he had been in contact with Michael JOHNSON's mother who stated Eric MCCLANAHAN had made numerous attempts to contact her son. Johnson's mother had collected the contact numbers for

11

MCCLANAHAN and then provided them to Task Force Officer Stewart. The numbers provided were: 256-375-4755, 417-379-8943, 913-638-0217, and 913-543-0504.

v. On October 6, 2014, a Title III application and order authorizing a wiretap for cellular telephone number 417-365-2085, a telephone being utilized by Kenneth FRIEND, was signed by the Honorable M. Douglas Harpool, United States District Judge for the Western District of Missouri. On the same day, the DEA St. Louis Technical Operations group arranged with T-Mobile Corporation for the installation of the Title III. The Title III became active the same day.

w. On October 7, 2014, at approximately 8:46 p.m., and pursuant to the court authorized Title III Wire Intercept active on Kenneth FRIEND's telephone (417-365-2085), a text message was intercepted from 913-543-0504, a telephone attributed to Eric MCCLANAHAN. The text message read, "Call me." At approximately 8:47 p.m., a call was intercepted on the wiretap where FRIEND called MCCLANAHAN. The call was placed from FRIEND's telephone (417-365-2085) to 913-543-0504. During the ensuing conversation, MCCLANAHAN was heard telling FRIEND he is "sitting pretty good" but it would be later tonight or tomorrow because he (MCCLANAHAN) was just trying to "get a feel." MCCLANAHAN continued and asked FRIEND, "what kind of cash you sitting on?" FRIEND tells MCCLANAHAN he is "about 30 with somebody else" and stated he would take "something for sure." MCCLANAHAN told FRIEND he would like his "a lot better." Based on their training and experience, officers believe that MCCLANAHAN was telling FRIEND that he had methamphetamine available to purchase. FRIEND indicated that he had another deal involving $30,000 with another

12

source of supply, and MCCLANAHAN responded that his methamphetamine is higher quality.

  x. On October 9, 2014, this Court granted a pen register and a GPS location warrant for cellular telephone number 913-543-0504. The pen register and the GPS location warrant became active the following day, October 10, 2014. Since the activation date, telephone 913-543-0504 has shown very limited use, and the GPS location reveals the telephone is in close proximity to 3301 E. State Highway CC, Fair Grove, Missouri. This is the residence of MCCLANAHAN's girlfriend, Bonnie AMODIO.

  y. On October 10, 2014, pursuant to the aforementioned court authorized Title III Intercept on Kenny FRIEND's telephone (417-365-2085), several text messages and a call were intercepted from the Target Telephone (417-241-5444). During the call, the monitoring officers recognized MCCLANAHAN as the person using the Target Telephone (417-241-5444). Officers believed the intercepted communication arranged a drug transaction. The first text message was placed at 6:03 p.m. In that text message, MCCLANAHAN asked FRIEND, "Ya...same thing If you could." FRIEND responded, "Im at the house come on ive gotta see my guy." MCCLANAHAN responded, "I just woke up and got no vehichle here." FRIEND then asked, "U got bread there."

  z. At approximately 6:23 p.m., a call between FRIEND and MCCLANAHAN was intercepted over the Title III wiretap. FRIEND placed the call to MCCLANAHAN, who was using the Target Telephone (417-241-5444). During the ensuing conversation, MCCLANAHAN tells FRIEND, "I got bread out here (inaudible) so, I ain't got no ride." FRIEND responded, "Alright, well I just hate to fucking, I hate to even come that

13

way for (inaudible). Know what I mean?" MCCLANAHAN stated, "Yeah, I understand." FRIEND then tells MCCLANAHAN, "Uh, but if I'm, uh, come out there and get it I might as well bring it. You know what I'm saying?" FRIEND then tells MCCLANAHAN he will be there shortly and MCCLANAHAN gives FRIEND directions to his residence.

aa. At approximately 6:45 p.m., surveillance was established near MCCLANAHAN's residence at 3301 E. State Highway CC, Fair Grove, Missouri. Constant surveillance could not be maintained on the residence because of its secluded location and rural setting. The court authorized GPS locator activated on MCCLANAHAN's telephone (913-543-0504), indicated the telephone was close to this address.[1] At approximately 7:01 p.m., surveillance observed a white 2002 Ford Mustang, bearing Oklahoma registration 820-K0Z, pull into the driveway leading to MCCLANAHAN's residence. FRIEND had previously been observed driving this vehicle, and the vehicle was observed at FRIEND's residence earlier in the day by law enforcement. The Mustang was seeing leaving at approximately 7:22 p.m.

bb. Based on the intercepted communications, surveillance, and training and experience, law enforcement believes that MCCLANAHAN is using the Target Telephone, and that it was used to arrange a drug transaction on October 10, 2014.

10. Based upon the above facts, and pursuant to 18 U.S.C. §§ 3127, 2703(c)(1)(B), 2703(c)(2), and 2703(d), because there are reasonable grounds to believe such information is relevant and material to an ongoing criminal investigation, Applicant requests Verizon

---

[1] The GPS locator did not provide an exact location.

14

Corporation, and any other person or entity providing wire or electronic communications service in the United States whose assistance may facilitate the execution of the order, be ordered to supply the following subscriber information: (A) name; (B) address; (C) the billing names and addresses (if different); and (D) telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address of a subscriber, for published, non-published, or unlisted dialing, routing, addressing, or signaling information captured by the pen register on the Target Telephone, and for published, non-published, or unlisted dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication transmitted to the Target Telephone as captured by the trap and trace device on the Target Telephone, upon oral or written demand by agents of the DEA.

11. In accordance with Title 18 U.S.C. § 3121(c), Applicant has informed the DEA it shall use technology reasonably available to it to restrict the recording or decoding of electronic or other impulses to the dialing, routing, addressing and signaling information utilized in the processing and transmitting of wire or electronic communications so as not to include the contents of any wire or electronic communication.

12. Because the assistance of Verizon Corporation will be necessary to accomplish the objectives of the requested order, Applicant further requests the order direct Verizon Corporation to furnish information, facilities, and technical assistance necessary to accomplish the installation of the Pen/Trap, including installation and operation of the devices unobtrusively and with a minimum of disruption of normal service. Verizon Corporation shall be compensated by DEA for reasonable expenses incurred in providing such facilities and assistance in furtherance of the order.

15

Case 6:14-pr-02062-DPR   Document 1   Filed 10/15/14   Page 15 of 18

13. It is further requested this Court's order apply to any changed cellular telephone number subsequently assigned to an instrument bearing the same cellular device as the Target Telephone, or any changed cellular device subsequently assigned to the same telephone number as the Target Telephone, or any additional changed telephone number(s) and/or cellular device(s), whether the changes occur consecutively or simultaneously, listed to the same subscriber and wireless telephone account number as the Target Telephone within the 60-day period authorized by this order.

14. Applicant further requests the Court direct the local, long distance, and wireless carriers listed in the order, and any other person or entity providing wire or electronic communication service in the United States whose assistance is used to facilitate the execution of the order, to notify special agents of the DEA, upon oral or written request, of any and all changes (including additions, deletions, and transfers) in service regarding the Target Telephone, to include telephone numbers and subscriber information (published and non-published) associated with these service changes.

15. Applicant further requests, pursuant to 18 U.S.C. § 3123(d), the Court direct the local, long distance and wireless carriers listed in the proposed order, and any other local, long distance or wireless carrier that is obligated by the order to provide assistance to the DEA not to disclose in any manner, directly or indirectly, by any action or inaction, to the listed subscriber(s) for the Target Telephone, the subscriber of the incoming calls to or outgoing calls from the Target Telephone, the occupant(s) of said premises, or to any other person, the existence of the Application, the resulting court order, in full or redacted form, or the investigation for any reason, except as required to execute the order, unless or until ordered by this Court. Applicant further

16

requests the order direct Verizon Corporation to take all necessary steps to provide access to enhanced caller identification to the DEA and to take all steps necessary to ensure the addition of enhanced caller identification is not reflected on the customer's bill or otherwise disclosed to the customer.

WHEREFORE, IT IS REQUESTED this Court enter an ex parte order for a period of sixty (60) days, commencing upon the date of installation of the Pen/Trap, authorizing the installation and use of a Pen/Trap to collect the dialing, routing, addressing, and signaling information (including date and time) associated with communications to and/or from the Target Telephone.

IT IS FURTHER REQUESTED the order authorize agents of the DEA to acquire, during the same 60-day period, subscriber information for the numbers captured by the pen register and trap and trace.

IT IS FURTHER REQUESTED the order direct the Verizon Corporation to furnish the DEA forthwith all information, facilities and technical assistance necessary to effectuate the order unobtrusively and with minimum interference to the services presently accorded the user of the Target Telephone.

IT IS FURTHER REQUESTED this Application and the anticipated order of this Court be filed under seal, and the Court direct Verizon Corporation not to disclose to any person the

existence of this Application, the resulting order, or the investigation for any reason, except as required to execute the order, unless or until ordered otherwise by this Court.

I declare the foregoing is true and correct to the best of my belief and knowledge.

Executed on October 15th, 2014.

Respectfully submitted,

Tammy Dickinson
United States Attorney

By

Gary Milligan
Assistant United States Attorney

United States Attorney's Office
901 St. Louis Street, Suite 500
Springfield, Missouri 65806
Telephone: (417) 831-4406

Sworn to before me and subscribed in my presence at Springfield, Missouri, this 15th day of October, 2014.

HONORABLE DAVID P. RUSH
United States Magistrate Judge
Western District of Missouri

18